**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| JULIE HUNTER, an individual; and TALON HUNTER, a minor, BY AND THROUGH HIS GUARDIAN AND NEXT FRIEND, JULIE HUNTER,<br><br>Plaintiff,<br><br>vs.<br><br>GLAXOSMITHKLINE PLC, a British public limited company ; and GLAXOSMITHKLINE, LLC, an American limited liability company.<br><br>Defendant. | CIVIL ACTION NO. 2:2015-cv-00544 |

## **DEFENDANT GLAXOSMITHKLINE LLC'S MEMORANDUM OF LAW SUPPORTING ITS MOTION TO DISMISS**

In support of its Motion to Dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant GlaxoSmithKline LLC[1] ("GSK") submits the following Memorandum of Law.

### I. INTRODUCTION

On its face, Plaintiffs' Complaint fails to allege any facts in support of their cause of action. Plaintiffs allege that Plaintiff Talon Hunter was born with

---

[1] The Complaint names GlaxoSmithKline plc and GlaxoSmithKline LLC as defendants. GlaxoSmithKline plc is a public limited company organized under the laws of the United Kingdom with its principal place of business in the United Kingdom and, to date, has not been served with the Complaint. GSK states that GlaxoSmithKline plc has never directly or indirectly promoted, marketed, distributed, manufactured, or sold Zofran® in the United States. Accordingly, GSK asserts that GlaxoSmithKline plc is an improper defendant in this action.

1

congenital abnormalities caused by Plaintiff Julie Hunter's ingestion of Zofran®, a prescription anti-nausea medication approved by the federal Food and Drug Administration ("FDA"), during her pregnancy with Talon. (Compl. ¶¶ 6, 19, 22, 28, 31, 35, 39.). Yet Plaintiffs acknowledge that Plaintiff Talon Hunter's congenital abnormalities were caused by "a duplication of the long arm of his 13th chromosome," *id*. ¶ 12, otherwise known as Trisomy 13. Plaintiffs do not and cannot credibly allege a single fact in support of the allegation that exposure to Zofran® during pregnancy can cause an error in cell division that results in Trisomy 13.[2]

Despite this fact, Plaintiffs pleaded seven causes of action in the Complaint alleging that the chromosomal abnormalities were caused by Zofran® use after the time of conception for pregnancy-related nausea. *Id*. ¶ 6. Quite simply, Plaintiffs' Complaint does not accord with Federal Rule of Civil Procedure 8, and the pleading standards outlined in the Supreme Court's decisions in *Twombly* and *Iqbal*, because it fails to allege any facts to support Plaintiffs' general, conclusory allegations. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Plaintiffs' claims are also defeated by the learned intermediary doctrine. *See Stone v. Smith, Kline & French Labs*., 447 So. 2d 1301, 1304 (Ala. 1984). The Complaint should therefore be dismissed.

---

[2] Because Trisomy 13 is caused by random errors in cell division, it is not usually inherited from the parents. *See* Compl. ¶ 12.

## II. LEGAL STANDARD

To survive a Rule (12)(b)(6) motion to dismiss, a complaint must set forth facts demonstrating a plausible claim for relief. *Twombly*, 550 U.S. at 556. Although the court must accept the complaint's factual allegations as true, the court need not credit unfounded conclusory allegations. *Iqbal*, 556 U.S. at 686. In *Twombly* and *Iqbal*, the Supreme Court expressly articulated the pleading standard applicable to a complaint filed in federal court. For a plaintiff's complaint to survive a motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A proper pleading "requires more than labels and conclusions." *Id*. at 555. The "threshold requirement of Rule 8(a)(2)" is that the complaint "possess enough heft to show that the pleader is entitled to relief." *Id*. at 557 (internal quotation marks omitted).

In *Iqbal*, the Supreme Court established a two-step process based on Rule 8(a) to determine whether a complaint meets the standard to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678–81. First, the court must identify those allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id*. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," nor do "formulaic recitation[s] of the elements of [the] cause[s] of action" with no facts to support the claims. *Id*. at 678 (citing *Twombly*, 550 U.S. at 555). "While legal conclusions

3

can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679. Complaints comprised of "'naked assertion[s]' devoid of 'further factual enhancement'" are plainly insufficient. *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557).

Second, the court should assume the truth of well-pleaded factual allegations, if the complaint contains any, and determine whether they plausibly give rise to an entitlement to relief. *Id*. at 681. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief,'" and it, therefore, should be dismissed. *Id*. at 679 (quoting FED. R. CIV. P. 8(a)(2)). The Rule 8 pleading standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678 (citing *Twombly*, 550 U.S. at 555). Courts must dismiss complaints that assert only "a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556).

### III. ARGUMENT

#### A. The Complaint Does Not Meet Federal Pleading Standards

Plaintiffs do not allege a *single* fact to support their conclusory allegations that GSK acted unlawfully. Plaintiffs likewise fail to draw any connection between Plaintiff Talon Hunter's chromosomal abnormalities and GSK's alleged conduct. Instead, in each count Plaintiffs merely mirror the elements of the causes

4

of action without providing any factual enhancement. Under federal pleading standards, "conclusory statements" or "naked assertions devoid of further factual enhancement" do not insulate a complaint from a motion to dismiss. *Iqbal*, 556 U.S. at 678.

In Count I, for example, Plaintiffs allege a violation of the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"). (Compl. ¶ 15-19.) Under this doctrine, a defendant may be liable if the plaintiff shows the defendant manufactured "an unreasonably dangerous product that reaches the consumer substantially unaltered and, because of its unreasonably dangerous condition, injures the consumer when put to its intended use." *Beam v. Tramco, Inc.*, 655 So. 2d 979, 981 (Ala. 1995). Here, Plaintiffs' only allegations of unlawfulness are that "[t]he drug Zofran was not reasonably safe when being used in a foreseeable manner, but to the contrary, was defective and unreasonably dangerous when being so used" and that "[GSK] knew or in the exercise of reasonable care should have known that the drug was unreasonably dangerous when being so used in a foreseeable manner." (Compl. ¶ 17.) It is obvious that Plaintiffs only restate the basic elements of the cause of action while inserting "GSK" to give their conclusory allegations the appearance of factual allegations. The Eleventh Circuit has held that "legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

Indeed, such "threadbare recitals of the elements of a cause of action" are precisely the type of allegations the Supreme Court has deemed insufficient to survive a motion to dismiss. *Iqbal* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Nor do Plaintiffs allege each of the required elements of their claim. A cause of action brought under the AEMLD demands that a plaintiff show "a safer, practical, alternative design was available to the manufacturer at the time it manufactured the allegedly defective product." *Gen. Motors Corp. v. Jernigan*, 883 So. 2d 646, 662 (Ala. 2003). In addition to the fact that Plaintiffs fail to provide any factual support for their allegation that Zofran® was defective, Plaintiffs fail to allege any facts suggesting a safer alternative was available to GSK at the time it manufactured Zofran®. Plaintiffs have therefore failed to show a plausible right to relief under the AEMLD.

The Complaint's second count suffers from the same deficiency. In Count II, Plaintiffs plead a failure to warn claim, which can be made when "the manufacturer failed to warn the physician of a risk not otherwise known to the physician and that the failure to warn was the actual and proximate cause of the patient's injury." *Wyeth, Inc., v. Weeks*, No. 1:10-cv-602, 2014 WL 4055813, *20 (Ala. Aug. 15, 2014). But Plaintiffs only allege that "[GSK] negligently failed to warn Plaintiff, Julie Hunter, of the side effects of the drug Zofran, which is designed, manufactured, and/or distributed by said Defendants." (Compl. ¶17.)

Like in Count I, Plaintiffs do not offer any facts to support this legal conclusion. They do not even identify the warnings that did accompany the drug much less provide a single reason for how the warnings were insufficient. And Plaintiffs again fail to adequately plead all of the required elements of the cause of action. *See Wyeth*, 2014 WL 4055813, *20 (requiring plaintiffs bringing a failure to warn claim against a prescription drug manufacturer to allege that the manufacturer failed to warn their physician and that their physician would not have prescribed the drug with proper warning).

The rest of the Complaint is similarly devoid of any supporting factual allegations. The only assertions of wrongdoing in each of the remaining counts are:

    a. Count III (breach of warranty): "The drug Zofran, which injured Plaintiff Talon Hunter, was defective and unmerchantable, i.e., the drug Zofran was not fit for ordinary purposes for which the drug was used due to the hazard of the drug causing personal injuries." (*Id.* ¶26.)

    b. Count IV (negligence): "[GSK] negligently performed or failed to perform the duties owed to Plaintiffs, Talon Hunter and Julie Hunter." (*Id.* ¶30.)

c. Count V (wantonness): "By designing, manufacturing, selling and/or distributing the drug Zofran, which was taken by Plaintiff Julie Hunter, [GSK] engaged in conduct which was carried on with reckless or conscious disregard of the rights or safety of others, in violation of Alabama Code 6-11-20(b) (1975)." (*Id.* ¶33.)

d. Count VI (strict liability): "Due to the nature of the drug Zofran's side effects [GSK is] strictly liable for damage which resulted from Plaintiff, Julie Hunter, taking Zofran." (*Id.* ¶38.)

It is evident that the entire Complaint comprises only a few bare, conclusory legal allegations. Because conclusory allegations without supporting facts have no probative value, *see Iqbal*, 556 U.S. at 679, Plaintiffs have rendered their Complaint effectively meaningless. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (noting that when a court considers a motion to dismiss, it should first "eliminate any allegations in the complaint that are merely legal conclusions"). Even setting aside the scientific flaws at the heart of Plaintiffs' lawsuit, there are simply no facts in Plaintiffs' Complaint that support "a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. As such, the Court should dismiss the Complaint for failure to state a claim.

**B. Even if the Complaint Survives *Twombly* and *Iqbal*, the Learned Intermediary Doctrine Defeats Plaintiffs' Claims**

Alabama courts observe the Learned Intermediary Doctrine, which holds that a manufacturer's duty to warn a consumer about a prescription drug "is limited to an obligation to advise the prescribing physician of any potential dangers that may result from the drug's use." *Stone,* 447 So. 2d at 1304. In other words, prescription drug manufacturers have no duty to warn consumers directly. *Id*. Under the Learned Intermediary Doctrine, plaintiffs must show that the defendant failed to properly warn their physician and that their physician would not have prescribed the medication had he or she been properly warned. *Id*.; *see also Stephens v. Teva Pharm., U.S.A., Inc*., No. 5-13-cv-01357, 2014 WL 7723296, *6 (N.D. Ala. Oct. 1, 2014) ("Clearly, the decision to use a medication as a first-line treatment is uniquely up to the prescribing medical professional and based on a decision concerning his or her patient."). Here, taking the allegations in the Complaint as true, Plaintiffs' wholesale failure to allege any facts about Plaintiff Julie Hunter's prescribing physician is fatal to their claims.

**C. Plaintiffs' Strict Liability Claim Is Not a Cognizable Cause of Action**

Even if the Complaint survives *Twombly* and *Iqbal*, the Court must dismiss Count VI for "Strict Liability" because it is not legally cognizable under Alabama law. In *Casrell v. Altec Industries*, 335 So. 2d 128, 132 (Ala. 1976), the Supreme

Court of Alabama recognized a cause of action against product manufacturers but clarified that "[w]e do not intend to impose a no-fault concept." *See also Dennis v. Am. Honda Motor Co.*, 585 So. 2d 1336, 1338 (Ala. 1991) ("[T]his Court rejected the no-fault concept of § 402A when it established the AEMLD."); *Keck v. Dryvit Sys.*, 830 So. 2d 1, 12 (Ala. 2002) (citing *Casrell*); *Foster v. Bridgestone Americas, Inc.*, No. 11-0175-WS-N, 2013 U.S. Dist. LEXIS 17288, *5 (S.D. Ala. Feb. 8, 2013) ("Alabama courts have considered the doctrine of strict liability and have chosen not to adopt it wholesale in the products liability context."). This Court should therefore dismiss Count VI because it purports to bring a cause of action in strict liability under Alabama law—a claim that does not exist.

## IV. CONCLUSION

Plaintiffs fail to provide any legal or factual basis for the allegations in their Complaint. Because the pleading standards outlined in *Twombly* and *Iqbal* demand more than the mere conclusory allegations offered by Plaintiffs, their claims cannot survive dismissal. Accordingly, the Court should grant GSK's Motion to Dismiss.

Respectfully Submitted,

s/ Maibeth J. Porter
Maibeth J. Porter (ASB-3915-O40M)
Bryan A. Coleman (ASB-9940-R52C)

>                           Attorneys for Defendant GlaxoSmithKline LLC

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, Alabama 35203
mporter@maynardcooper.com
bcoleman@maynard.cooper.com
Telephone: (205) 254-1000
Facsimile: (205) 254-1999

## **CERTIFICATE OF SERVICE**

I hereby certify that I served a copy of the foregoing document on all counsel of record through the Court's electronic filing system or by United States Mail, on this the 27th day of April, 2015.

>                           s/Maibeth J. Porter
>                           OF COUNSEL